The Chicago and State Line Railway Company

*v.*

Mary Kline *et al.*

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. Eminent domain—*when instruction as to credibility of witnesses is erroneous.* An instruction in a condemnation case is erroneous which states that if the jury believed any witness had knowingly sworn falsely upon any material point, or had *knowingly belittled* any material fact in the case, they might properly disregard all the testimony of such witness, except so far as it was corroborated by other and credible evidence.

2. Same—*rule as to admissibility of evidence of sale in vicinity.* Evidence of voluntary sales of other lands in the vicinity similarly situated is admissible in evidence in a proceeding to condemn a railroad right of way through a farm, if it is shown the lands so sold were similar in locality and character to the farm; but evidence of sales of land in small tracts, some of them within a mile of the farm, for fancy farming and country residences, induced by the establishment of a country club in the vicinity, is not admissible, where such sales have not extended to the defendant's land nor to adjacent lands.

3. Same—*when ruling questions to be improper does not cure their prejudicial effect.* Where counsel for the defendant in condemnation, under the guise of testing the knowledge of plaintiff's witnesses, puts questions assuming facts with reference to sales of other land which the defendant has no right to prove and evidence of which has been excluded, the fact that the court rules the questions to be improper does not cure the harmful effect of getting before the jury the facts which they have no right to consider.

4. Same—*when admission of photographs is error.* Admitting photographs of costly country residences on tracts of land in the vicinity of club grounds some distance from the defendant's farm, upon the ground that they tended to impeach a witness for the plaintiff who had failed to recognize some of the buildings when the photographs were shown to him, is error, where evidence as to the sales of the land on which such residences were built has been properly excluded.

5. Same—*when instruction as to damages is erroneous.* An instruction in a proceeding to condemn a right of way through a farm, which authorizes the jury to allow damages for the most injurious use which might reasonably and lawfully be made of the

right of way consistent with the evidence, is erroneous in not confining the jury to such damages as might reasonably be expected to occur in the intended use of the property, where there is evidence that the right of way is wide enough to lay six tracks but there is nothing from which a presumption could arise that more than two tracks would be laid.

Appeal from the County Court of Lake county; the Hon. D. L. Jones, Judge, presiding.

Charles Whitney, and Ralph J. Dady, (S. A. Lynde, of counsel,) for appellant.

Ela, Grover & Graves, (Frank R. Grover, of counsel,) for appellees.

Mr. Chief Justice Cartwright delivered the opinion of the court:

This is an appeal from a judgment of the county court of Lake county fixing the compensation and damages to be paid by appellant to appellees for the right of way of appellant's railroad across a farm in that county.

The farm contains one hundred and sixty acres and lies north-west of the city of Lake Forest. The defendant Mary Kline is the owner of the farm and the defendant Frank J. Kline is a tenant, who leased the farm about three months before this proceeding was commenced for a term of three years, at $3.75 per acre annual rent, and the farm is used as a dairy farm for keeping and pasturing cows. There is a public highway running north and south along the west side of the farm, and the farm buildings are situated near the south-west corner, near that highway. The right of way runs across the east part of the farm, remote from the farm buildings, beginning one hundred and eight feet west of the south-east corner and running in a straight line a little west of north across the farm to a point six hundred and eighty-nine feet west of the north-east corner, taking five and

eighty-four hundredths acres and leaving about twenty-two acres in pasture land on the east side of the railroad. The grade at several places is the natural level of the ground, but most of the way there will be an embankment, which will be about seven and one-half feet high at the highest place. The petition described the strip to be taken, and the defendants each filed a cross-petition alleging that the remainder of the property would be damaged by taking the strip for right of way. The jury fixed the compensation to be paid to the defendant Mary Kline, as owner, at $1311.75 for the strip taken and $5660 for damages to the remainder, and awarded to Frank J. Kline, as tenant, $500 for damages to his lease-hold interest.

The fact to be determined by the jury was the fair cash market value of the land taken and the depreciation in the fair cash market value of the remainder of the farm which would result from the construction and operation of the proposed railroad. The witnesses for the petitioner fixed the value of the land taken at from $150 to $200 per acre and the damage to the land left on the east side of the railroad at $50 per acre, and said there would be no damage to the main body of the farm, consisting of a little over one hundred and thirty-one acres west of the railroad. The defendants' witnesses estimated the farm as a whole at $300 per acre and fixed the value of the land taken at from $225 to $400 per acre, the damages to the pasture land east of the road at from $175 to $275 per acre, and the damage to the one hundred and thirty-one acres, constituting the body of the farm, at from $30 to $75 per acre. The claim of the defendants and the opinions of their witnesses were, that the farm had a market value far above that which it otherwise would have had on account of the fact that a club, called the Onwentsia Golf Club, had been located west of Lake Forest and some distance south of this farm, which had attracted to the vicinity of the club grounds rich people, who had purchased various tracts of ten acres or more at high prices,

some of which were within a mile of the farm, and had improved their grounds with costly residences and rendered them attractive by landscape gardening and expensive improvements. The demand for lands for such purpose had not extended to the farm nor the adjoining lands and no adjacent lands had been sold for like purposes. The farm on the north of this one had been sold the previous fall for $137.50 per acre, and that had been the only sale of adjacent farm property within three years. Although the demand for tracts for fancy farming and summer or country residences had not extended to the farm, it was contended that there was a prospect that it would do so, and for that reason the lands were extremely valuable. The witnesses for the defendants based their valuations largely upon that ground, while witnesses for the petitioner did not give much weight to the establishment of the golf club and the purchase of tracts around it as affecting market values.

The court, by the seventeenth instruction given at the request of the defendants, directed the jury that if they believed any witness had knowingly sworn falsely upon any material point or had knowingly belittled any material fact in the case, they might properly disregard all the testimony of such witness, except so far as it was corroborated by other and credible evidence. The instruction did not state the law, which has never sanctioned any such proposition as that a jury may disregard the entire testimony of a witness who they think has either belittled or exaggerated some material fact about which he testifies. The doctrine *falsus in uno falsus in omnibus* is only applied as a rule of law to a witness who has knowingly and willfully sworn falsely as to some fact material to the issue. This instruction is even farther from the rule than the one condemned in *Chicago City Railway Co.* v. *Allen,* 169 Ill. 287, which only authorized the jury to reject the testimony of any witness who had knowingly and willfully exaggerated some fact or circumstance for the purpose of deceiving, misleading or imposing

220—22

upon the jury. If the jury concluded that any witness had knowingly belittled the advantages to the market value of this farm of the golf club and hunting club, with their surroundings, they were authorized by this instruction to disregard all the testimony of such witness. If the fact that the "Fox Hunt" led directly across this farm, and that ladies and gentlemen of the club followed a pack of hounds over the fences and fields along the trail of an anise-seed bag and over the very ground where this right of way is located, did not commend itself to the judgment of a witness as enhancing market values, he could be regarded as belittling a material fact and his whole testimony be disregarded. The instruction was erroneous and harmful.

Evidence of voluntary sales of other lands in the vicinity similarly situated would 'have been admissible in evidence if the fact had been shown that the lands so sold were similar in locality and character to the farm. (*O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 151.) The defendants attempted, in the cross-examination of petitioner's witnesses and otherwise, to get before the jury the sales of the tracts of land before referred to, but the evidence was excluded for want of proof of similarity in locality and character, and the rulings of the court were correct. Counsel for defendants, however, accomplished practically the same result as though the proof had been admitted, by questions asked on cross-examination under the claim that he was testing the knowledge of the witnesses. On the cross-examination of witnesses for the petitioner questions were asked calling attention to particular tracts of land, with the inquiry whether the fact that the tract named had been sold for a certain sum per acre was a circumstance considered by the witness in fixing the market value of this farm. For example, a witness was asked whether the fact that a certain tract of thirty-seven acres had been sold for $500 per acre was a circumstance worth considering. Upon objections the court ruled each question improper, but practically the same ques-

tions were repeated as to different tracts, so that the effect was to get before the jury, by means of questions, assumed facts which the defendants had no right to prove. In such a case the harm is often done before the ruling, and a correct ruling is not always a sufficient antidote. When the court had once ruled on the question it ought to have enforced respect for the ruling by not permitting reiterations of the questions.

Counsel for defendants exhibited to a witness for petitioner eight photographs of costly residences, with expensive improvements, and asked him what places they were. The witness did not distinguish some of the particular buildings by looking at the photographs, and the defendants afterward proved that they were photographs of residences and grounds west of Lake Forest, in the vicinity of the club grounds, and offered them in evidence. They were admitted over the objection of the petitioner. The only ground upon which it is insisted that they were competent is that they tended to impeach the witness. That claim is entirely baseless, and the natural presumption would be that the purpose was to exhibit to the jury the expensive country residences, with their elaborate improvements, such as stone gateways and stone walls and roadways, upon which defendants based the claim that the farm was of greater market value. The court erred in admitting the photographs in evidence.

Counsel for defendants asked a witness for petitioner how many tracks could be laid on the right of way. The witness, who was a civil engineer, testified that it was proposed to lay two tracks, but that the width of the right of way would admit of about six tracks being laid. The farm was out in the country, and there was nothing from which a presumption could arise that six tracks would ever be laid. Some witnesses for the defendants said that the pasture of twenty-two acres on the east of the right of way would be worthless on account of the trouble of driving cattle across the tracks, and if the number of tracks had any relation to

damages it was in respect to the difficulty of crossing. The court, at the request of the defendants, gave the seventh instruction, authorizing the jury, in determining the amount of damages, to estimate and award such damages for the most injurious use which might reasonably and lawfully be made of the right of way, consistent with the evidence. This instruction was erroneous in calling upon the jury to assess prospective damages upon the presumption that the right of way would be put to the use most injurious to the owners of the farm, and in not confining the jury to such damages as might reasonably be expected to occur in the intended use of the property. The jury were authorized to include all such remote and speculative damages as might result from the most injurious use to which the right of way could lawfully be put, although there was nothing from which the jury could infer that anything was intended except the construction and operation of a double track railway.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*