**CITY OF PEARLAND, Petitioner,**

**v.**

**John ALEXANDER, as Independent Executor and Trustee of the Estate of C. H. Alexander et al., Respondents.**

**No. B–2911.**

Supreme Court of Texas.

June 28, 1972.

Rehearing Denied July 26, 1972.

Sears & Burns, Robert L. Burns, Houston, for petitioner.

Fulbright, Crooker, Freeman, Bates & Jaworski, Fred M. Lange and William H. Young, Houston, Wiley Thomas, Angleton, for respondents.

STEAKLEY, Justice.

This is an eminent domain proceeding. The City of Pearland, petitioner, acquired from the Alexanders a surface tract of ten acres as a site for a sewage disposal plant, together with 2.04 acres for a public street easement, .046 acres for a pipeline easement and certain temporary construction easements. The award of damages in

these respects is not in question. What is questioned by the City is the manner in which the award of severance damages of $143,000 to the remainder Alexander tract of 810.724 acres was reached. The trial court judgment was affirmed by the court of civil appeals. 468 S.W.2d 917.

Pursuant to the order of the trial court[1] in response to the motion in limine of the landowners, the court in the course of trial restricted the City in showing by direct examination of its own witnesses or by cross-examination of the witnesses for the landowners, the actual uses of the ten acre site which at the time of the taking were reasonably foreseeable and probable, and hence would be a factor in the market value determinations as to the remainder tract.

In its submission of the case to the jury, the trial court gave the following special instruction immediately preceding the crucial market value issues pertaining to the remainder tract:

"You are instructed that the surface estate of the ten (10) acre tract of land condemned by the City of Pearland in this case and described as Tract One in the evidence before you will be used by the City of Pearland as a site for a sewerage disposal plant and you are to presume that the City of Pearland will exercise its rights and use and enjoy this property to the full extent for such a sewerage disposal plant."

We granted the writ of error of the City of Pearland to resolve the problem of whether these trial procedures, particularly the giving of the above special instruction, conformed to the established willing-seller willing-buyer method of determining market value in the assessment of severance damages, see City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954) and State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194, ibid 979 (1936); and if error was committed, whether the error was prejudicial within the requirements of Rule 503, Texas Rules of Civil Procedure; see Gomez Leon v. State, 426 S.W.2d 562 (Tex. 1968). Our conclusion is that reversible error was committed by the trial court and we accordingly reverse the judgments below and remand the cause for another trial.

This Court in G. C. & S. F. Ry. Co. v. Fuller, 63 Tex. 467 (1885), early established the fair market value criterion in the determination of severance damages. Charges given by the trial court to such effect were approved as fairly submitting to the jury the law for the government of the case: ". . . the measure of damage is for the actual loss thereby sustained in the fair, reasonably salable value of plaintiff's said property: that is to say, if by reason of defendant's acts complained of, plaintiff's property is lessened in value, he is entitled to recover the fair and actual difference between the fair valuation of said property. . . ."

Later, in St. Louis, A. & T. Ry. Co. v. Henderson, 86 Tex. 307, 24 S.W. 381 (1893), this Court quoted another authority with approval in saying that all damages, present and prospective, that are the natural, necessary or reasonable incident of the improvement constitute the compensation which our Constitution requires to be made in advance. The Court concluded that severance damages are those which would naturally or necessarily flow from the taking and proper construction and operation of the improvement; and that other damages caused to the balance of the tract

1. "It is therefore further ordered that it is legally presumed that Plaintiff will exercise its rights in regard to the entirety of the surface estate in the ten acre tract being condemned herein as Tract No. One for use as a sewerage disposal plant site, to the fullest extent and for the highest use for which it is taken, and Plaintiff is hereby prohibited from introducing any evidence to the effect that less than the full ten acres will be used for such a sewer plant."

which may be known with reasonable certainty would be included.

■ This rule became even more settled in State v. Carpenter, *supra*. It was there reaffirmed that where a part of a tract of land has been taken for a public use, damages to the remainder tract are to be determined by ascertaining the difference between its market value immediately before and after the appropriation, taking into consideration the nature of the improvement, the use to which the land taken is to be put, and all circumstances which tend to increase or diminish the present market value. The recovery is for damages which reasonably could have been foreseen and determined at the time of condemnation. City of LaGrange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243 (1943). The willing-seller willing-buyer test of market value is to be applied and those factors are to be considered which would reasonably be given weight in negotiations between a seller and a buyer. City of Austin v. Cannizzo, *supra*.

In Texas Electric Service Co. v. Campbell, 161 Tex. 77, 336 S.W.2d 742 (1960), we ruled evidence based on possibilities rather than reasonable probabilities to be incompetent, citing State v. Carpenter, *supra*, that "evidence should be excluded relating to remote, speculative, and conjectural uses, as well as injuries, which are not reflected in the present market value of the property." This is but saying, as in *Cannizzo*, that the question of the competency of evidence bearing on the issue of market value at the time of the taking rests on those factors of reasonable weight in the factual determination of what a willing seller would sell for and what a willing buyer would pay. See also Andrews v. Cox, 127 Conn. 455, 17 A.2d 507 (1941); Taft v. Commonwealth, 158 Mass. 526, 33 N.E. 1046 (1893); and Chicago & S. L. R. Co. v. Kline, 220 Ill. 334, 77 N.E. 229 (1906). The Nichols treatise states the following:

"The use to which the condemnor proposes to devote the property taken must be considered in ascertaining the damages to the remainder area. . . . The condemnee is entitled to consideration of the damage which the condemnor has a right to inflict although it cannot be assumed that the property will be put to its most damaging use." 4–A NICHOLS ON EMINENT DOMAIN sec. 14.24.

■ It has been uniformly recognized in the development and refinement of the market value test for determining severance damages that the State v. Carpenter method of trial and submission is appropriate in all but exceptional cases. The jury is instructed that the term market value is the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying. The jury is asked to find the market value of the remainder tract immediately before the taking and the market value thereof immediately after the taking. In the determination of the latter, the jury is instructed to take into consideration the uses to which the land taken is to be subjected. The answers to the issues are to be determined in the light of the evidence offered by the parties and admitted under the rulings of the trial court. As said in State v. Carpenter, everything which affects the market value of the land itself, having due regard for past and probable future injuries, may be accurately reflected by ascertaining the difference in value, when all the legitimate testimony is properly submitted to the jury for consideration; and it is proper to admit evidence upon all matters which tend to increase or diminish the present market value. The landowner may recover damages which are reasonably foreseeable, and he may show the reasonably probable uses of the tract taken that are calculated to depress the value of the remainder tract and thus enhance the recovery of damages. See *Cannizzo, supra*, where it was recognized that the determination of the value of a tract

taken permits consideration of all uses to which the property was reasonably adaptable and for which it was, or in reasonable probability would become, available within a reasonable time. But the public authority should not be required to pay severance damages on the basis of uses of the tract taken which are not at the time of the taking so reasonably probable as to be reflected in present market value and the jury should be permitted to give such weight to this factor as a prospective purchaser of the remainder tract would give. In our view this was erroneously precluded under the procedures of the trial court here, and the harm to the City would appear manifest.

The testimony of the three value witnesses of the landowners was based on the premise that the City would use the whole of the site for a plant and the City was restricted to this approach in the cross-examination of these witnesses. These three witnesses for the landowners expressed the opinion that the damages to the remainder tract, i. e., its diminished market value, was, $165,000, $162,500 and $98,400. The finding of the jury was in the sum of $143,000, which, it is seen, was more than $14,000 in excess of the mean estimates of these witnesses. In contrast, the value witnesses presented by the City testified to the opinion that the remainder tract suffered no consequential damages.

Further, the court admitted into evidence photographs depicting the large Lockwood and La Porte sewage plants of the City of Houston. This evidence was admitted under the testimony of a landowner witness that he knew of these two plants which in his opinion would be "probably comparable." He testified, however, that each plant was in an industrial area "vacant all around it" and "no homes within a good distance from it." The testimony was unclear and disputed regarding the acreage which would be required for a plant of the size and with the capacity of the Lockwood plant, although it was shown that the Lockwood plant had a rated capacity of thirty million gallons a day, thirty times the size of the plant constructed by the City after the taking of the ten acre site. The issue drawn by the parties is seen in the objection of the City to the photographs and the reply of counsel for the landowners.[2] The photographs were admitted into evidence consistent with other evidence rulings of the trial court, and their display to the jury undoubtedly conveyed the impression that the market value issues as to the remainder tract were to be determined upon the assumption that the entire site would be covered by a physical plant. This was the purpose of their introduction by the landowners as shown by the reply to the objection of the City copied in the margin.

As is evident, the overriding issue between the parties concerned the actual uses the City would make of the ten acre site, together with the right of the City to establish those which were reasonably probable. The court told the jury by the special instruction not only that the City would use the tract *as a site* for a sewage disposal plant, but that in determining the before and after market value of the re-

2. " . . . The jury is limited to reasonable probabilities as can be shown from the evidence, and should not be permitted by this court just to speculate that on any type of improvement that could be put there. . . . One that might in all reasonable probability be put on this property and not because the City of Houston or somebody else has constructed something of this type somewhere else, your honor.

" . . . Your honor, the jury is not entitled to go on reasonable probabilities.

The jury in this case is to presume that they will fully develop and fully use this ten acre site for a sewage disposal plant. That is what the cases and the motion in limine stood for this morning, and if they didn't need ten acres they shouldn't have taken ten acres, but when they walk out of this courthouse they are entitled to cram every square inch with a sewer disposal plant to service two-thirds of the City of Pearland and on into the future forever, and we are entitled to show them what a ten acre sewer plant looks like."

mainder tract it was required "to presume that the City of Pearland will exercise its rights and use and enjoy this property *to the full extent for such a sewerage disposal plant.*" [3] In our view, this instruction could only be understood by the jury as a mandate to presume a full use of the entire ten acres for an actual plant, rather than as a site for the plant and facilities that would be reasonably required; and as a further directive that in answering the market value issues the jury was to be governed by this presumption regardless of any evidence to the contrary, and whether or not such presumed use of the entire site for an actual plant was reasonably probable at the time of taking and would, or would not, be reflected in the market value of the remainder tract at such time. As such, the instruction was clearly erroneous as a comment on the weight of the evidence. Moreover, the opinion testimony of the value witnesses offered by the landowners rested on this same presumption and it is not surprising that the market value findings of the jury reflected the weight of their estimates of damages to the remainder tract.

We will not detail the evidence rulings of the trial court in this lengthy record. Suffice it to say that in view of the state of the evidence, it is our opinion that the jury was materially influenced in its market value findings by the special instruction; and that the error of the trial court in this respect, if for no other, was "reasonably calculated to cause and probably did cause the rendition of an improper judgment" under Rule 503, Texas Rules of Civil Procedure.

The landowner-respondents rely almost entirely on Perkins v. State, 150 S. W.2d 157 (Tex.Civ.App.1941, writ dismissed), and cases which followed. We have not construed *Perkins* as prescribing the rules or procedures for determining the measure of severance damages, see Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958); and White v. Natural Gas Pipeline Co. of America, 444 S. W.2d 298 (Tex.1969), but only as recognizing the ineffectiveness of promissory statements to reduce or mitigate damages. See also the annotation in 7 A.L.R.2d 364. Thus, the City would not be permitted under the *Perkins* rule to elicit testimony in the nature of a promise or representation that the physical structures erected on the ten acre site after the taking and before the trial, would not be increased in the future; and that the question of damages to the remainder tract should be determined on the basis of such a promise or representation. We agree that this would not be consistent with the whole taking. But we do not understand that the City sought to do this, or claims the right to do so. As we understand the record, the City claimed the right to show the reasonably foreseeable and probable uses of the ten acre site which at the time of taking would be required in accomplishing the municipal purposes for which it was taken; and that the jury should have been permitted to hear evidence upon, and to consider, this factor with all else a prospective purchaser would consider in reaching a market value determination respecting the remainder tract. This was not the problem in *Perkins*.

We are in general agreement with the rulings of the court of civil appeals on the other points of error urged by the City there, and here. We note, however, that most of these points present problems not likely to arise again.

The judgments below are reversed and the cause is remanded for trial conformable to this opinion.

McGEE, Justice (dissenting).

I respectfully dissent.

The Alexander tract contains 822.21 acres; it is bounded by Clear Creek on the east and on the west by over a half mile of frontage on Farm-to-Market Road 518.

3. Our emphasis.

This is the largest undeveloped tract left in the City of Pearland. The tract is surrounded by residential development. The jury found that the value of the tract taken was $22,000, or $2,200 per acre. There is ample expert opinion testimony to the effect that the highest and best use of the remainder would be for residential purposes.

The 10-acre site that was chosen for the sewer plant was located in the approximate center of the east line of the subject property. The plant located thereon is within clear view from almost every point on the remaining tract and from the Farm-to-Market road. Opposite this tract on the west side of the Farm-to-Market road is a shopping center. Extending from the sewage disposal plant on the east side of the tract, the 40 foot wide road easement extends to the west line and divides the large tract. Under the road easement extends the trunk sewer line.

The City's first sixteen points contend that the Court of Civil Appeals erred in not holding that the Trial Court erred in sustaining the landowners' Motion in Limine, its rulings on the admissibility of evidence consistent therewith, and its approval of an instruction given in the charge to the jury concerning the same matter.

The City complains of the order of the court sustaining the Motion in Limine which reads as follows:

"It is legally presumed that Plaintiff will exercise its rights in regard to the entirety of the surface estate of the 10-acre tract . . . for use as a sewage disposal plant site, to the fullest extent and for the highest use for which it is taken, and Plaintiff is hereby prohibited from introducing any evidence to the effect that less than the full ten acres will be used for such a sewer plant."

The error of the *majority opinion* in intimating that the Motion in Limine granted by the Trial Court was improper is clearly evidenced by the Plaintiff's (City of Pearland) requested instruction No. 2 quoted below:

"In answering Special Issue No. 6, you are instructed that the term 'uses to which the condemned parcels are to be subjected' means use of the ten acres of land as a site for a sewage disposal plant and use of the 2.04 acres of land as a public street. Use for a sewage disposal plant includes erection and maintenance of structures for the disposal of sewage and all uses which are reasonably incidental thereto, such as *open spaces for light, air, and appropriate ornamentation, landscaping, drives for vehicles and walks for pedestrians*, automobile parking areas, areas for repair and replacement, storage facilities, and *recreational areas for employees*. Use for a public street includes the right of the public, including the defendants, to walk and drive vehicles on the street and uses incidental thereto." (Tr. 41.). [Emphasis added.]

It should be obvious that upon retrial of this case the City and its witnesses will testify as to the "open spaces and light, air, and appropriate ornamentation, landscaping, drives for vehicles and walks for pedestrians and recreational areas for employees." Is the City saying, "I promise you a rose garden"? By sustaining the Motion in Limine the Trial Court properly prevented such promissory statements.

The true issue in this case is whether or not the proper amount of severance damages has been awarded for damages to the remaining properties. The sufficiency of this evidence has been passed upon by the Court of Civil Appeals. We have "no evidence" points before this Court. The majority opinion does not suggest that there is no evidence to support the jury verdict.

The City also complains of the following instruction contained in the Court's charge:

"You are instructed that the surface estate of the ten (10) acre tract of land

condemned by the City of Pearland in this case and described as Tract One in the evidence before you will be used by the City of Pearland as a site for a sew[er]age disposal plant and you are to presume that the City of Pearland will exercise its rights and use and enjoy this property to the full extent for such a sew[er]age disposal plant."

A similar instruction has been approved at least twice by a Texas appellate court. City of Corpus Christi v. Polasek, 404 S. W.2d 826 (Tex.Civ.App.1966, n. w. h.); City of Corpus Christi v. Nemec, 404 S. W.2d 834 (Tex.Civ.App.1966, n. w. h.).

Nowhere in that instruction does the Court instruct the jury that they must presume uses of the tract most injurious to the remainder or presume most value depressing uses. The testimony of the landowners' value witnesses was *not* predicated on the presumed most damaging use or that a plant would be constructed on every square foot of the ten acre site. It is undisputed that the entire ten acres at the time of trial was being used for a sewage disposal plant. The entire 10-acre site is enclosed by an unattractive cyclone fence. This constitutes "full use of the premises" as contemplated by the instruction. Contrary to the observation in the majority that the jury must presume "full use," it is undisputed in this record that the entire 10-acre tract is now in "full use" by the City of Pearland.

Although the City has alleged the necessity for a 10-acre site for sewage plant purposes and had admitted that it has the right to use the entire surface for such purpose, the City nevertheless contends that it has the right to offer evidence to show "in all reasonable probability" it would not exercise its full rights "in the reasonably forseeable future." The City by its pleadings has never limited or restricted its right to use the entire surface for sewage plant purposes. If it had no intention to use ten acres, the City could have condemned a smaller site.

Any effort of the condemnor to minimize its damage by such proof of intention to use less than the full rights being sought has consistently been denied by our Texas courts. In Perkins v. State, 150 S.W.2d 157 (Tex.Civ.App., 1941, writ dism'd), the State condemned a narrow strip off of the front of the landowner's homestead. The strip contained ornamental trees and shrubs, a honeysuckle hedge, rose bushes, a water pipeline and a drainage ditch. Over objection, a State's witness was permitted to testify that the *present policy* of the State Highway Commission was *not* to remove shrubs, etc., from highway rights-of-way unless they were hazardous to traffic. In holding the Trial Court erred in admitting such testimony, the Court said:

"The *probability* that the appropriator will not exercise, or the fact that there is no present intention of exercising, to the full extent the rights acquired, should not be considered in reduction of the damages, where there is nothing to prevent a full exercise of such rights, since the presumption is that the appropriator will exercise his rights and use and enjoy the property taken to the full extent." 20 C.J. 768, § 227. [Emphasis added.]

The Court said in Creighton v. State, 366 S.W.2d 840, at page 843 (Tex.Civ. App.1963, writ ref'd, n. r. e.):

"The presumption is that the State will exercise its rights and use and enjoy the property taken to the full legal extent."

The rule as set forth in the above quotations has long been followed by Texas courts. Hill v. State, 289 S.W.2d 801 (Tex. Civ.App.1956, n. w. h.); Strickland v. City of Friona, 294 S.W.2d 254 (Tex.Civ.App. 1956, writ ref'd, n. r. e.); Wiseman v. State, 406 S.W.2d 253 (Tex.Civ.App.1966, writ ref'd, n. r. e.); City of Corpus Christi v. Polasek, supra. See White v. Natural Gas Pipeline Company of America, 444 S. W.2d 298 (Tex.1969); Texas Power & Light Company v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958). See also Nichols on

Eminent Domain, Vol. 4A, § 14.24; 7 A. L.R.2d 364 at page 366, § 2, to the effect that it is not what the condemnor actually does or plans to do that determines the quantum of damage but rather what it acquires the right to do. For additional cases see Rayburn, Texas Law of Condemnation (1960) § 136; 27 Am.Jur., Eminent Domain § 272, p. 61; Vol. 29A C.J.S. Eminent Domain, § 155 p. 658; Vol. 5 Nichols, the Law of Eminent Domain, § 16.11 (1969).

The reasons for the rule are clearly set out in Nichols, supra:

"In other words, payment must be made for the rights which have been acquired, not the more limited use to which the condemnor may intend to devote the property taken. The question is not—How does the condemnor intend to use the property?—but, rather,—What right to use has been acquired? Various reasons have been given by the courts to support the above conclusion:

"(1) Damages are payable in money and the condemnor cannot substitute promises to mitigate damages in lieu thereof;

"(2) Damages may not be paid piecemeal, and are payable once and for all;

"(3) The constitution requires payment of full and just compensation.

"The foregoing is to be distinguished, of course, from those cases where (a) the taking is limited, (b) certain rights are reserved to the condemnee, or (c) the agreement as to future use is otherwise in binding form."

Based upon the authorities above discussed, I would hold that the special instruction, the order sustaining the Motion in Limine, and the rulings upon the admissibility of evidence consistent therewith were proper.

By its points 17 and 18 the City contends that there is no evidence to support the findings of the jury in answer to Special Issues No. 4 and No. 6. The jury found (4) that the market value of the remainder was decreased, and (6) that the market value of the remainder after taking was $1,640,592.80, a decrease of $143,000.00. The evidence on these issues was in sharp conflict. V. P. Ringer and Sid Holdridge, the city's witnesses, testified that the remainder was enhanced by the taking. Among others, John Alexander, Charles Osenbaugh and Marvin McGlathery gave testimony that would support the jury's answers to these issues.

A brief summary of the evidence in support of the jury's answers to Special Issues No. 4 and No. 6 is set forth below:

1. The City engineering expert testified that in March, 1966, that a 10-acre sewer plant site was chosen in order to serve sewage needs from 6000 acres of the 9000 acres of the City of Pearland. The other 3000 acres would be served by the Longwood plant. He further testified that the unit actually constructed is just the first unit of the sewer plant and covers about $\frac{1}{5}$th of an acre. Pictures of the present plant were introduced into evidence and its operations explained.

2. If a developer had chosen the site for the sewage plant, he would have located it in a boundary line corner in order to hide the site and facilities from as many prospective homes as possible. This is exactly what the City did not do. The same argument is made with reference to the 2.-04 acre and 40 foot wide roadway easement. At the time of trial the City had constructed on the easement a narrow shell-topped road approximately 10 feet wide with open ditches on both sides. It is an eyesore constructed in a manner inconsistent with the development of a first class subdivision. This is the type road that would appear in a substandard subdivision. The City has also constructed a barbed wire fence along the west side of the easement together with transmission poles, cross arms and lines along the same

side of the easement to bring electricity into the sewage plant. This construction by the City creates an eyesore, splitting the Alexander tract and creating a hindrance to orderly future development of the Alexander remainder. It is undisputed and testified to by the City's witness that "the vat usually overflowed every time it rained." Thus, fecal matter and other raw sewage pollutes the adjoining area and Clear Creek.

3. The landowners offered evidence, including pictures, to demonstrate that from time to time raw sewage overflowed from the tanks down on to the ground and ultimately to Clear Creek. That same was ugly and created unpleasant odors and further that same was unsanitary. Strong obnoxious odors emanate from this first unit extending in all directions for distances up to 1500 feet.

4. Loud noises coming from large blowers which pump air into the open vats can be heard in every direction as far as 1200 feet from the plant.

5. The ugly plant, substandard road, barbed wire fence, ditches and poles and crossbars are visible from nearly every point on the Alexander tract and from across the road on the west.

Taking those, and other facts into consideration, the expert witnesses concluded that the value of the acreage within 1000 to 1500 feet (98 to 125 acres) was decreased an average of 50% to 75%.

In passing upon the law question of "no evidence," appellate courts must consider only the evidence which supports the jury verdict and consider only the facts and circumstances which tend to sustain the verdict. Moreover, we must reject all evidence and inferences which are contrary to the finding of the jury. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; Biggers v. Continental Bus System, Inc., 157 Tex. 351, 303 S.W.2d 359 (1957); C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.1966); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 364 (1960).

The evidence shows that the sewage plant located on this 10-acre tract will serve a much larger area than the remaining lands of these landowners. While it is true that the Alexander's remainder might not have enjoyed the availability of sewage disposal but for the 10-acre sewage plant, neither would the other acreage which will be served by this plant. All of the surrounding acreage will also benefit by the presence of this 10-acre sewage plant. Alexander lands received special damages in that the sewage plant on the 10-acre tract produces offensive odors and noises and presents an unattractive appearance.

The Trial Court gave the proper and customary instruction in connection with Special Issue No. 6:

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally, and not peculiar to them, and connected with their ownership, use and enjoyment of the particular tract of land out of which Parcels have been condemned by the City of Pearland, and taking into consideration the uses to which the condemned parcels are to be subjected, what do you find from a preponderance of the evidence was the market value of the defendants' 810.724 acre remainder tract of land immediately after the acquisition of said parcels by the City of Pearland on March 18, 1966?"

This Court has approved the above instruction. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936). See Article 3265, Vernon's Ann.Texas Civil Statutes. Pictures of the sewage plant on the 10-acre site were admitted into evidence. Costs of the sewer lines and of the plant were also admitted into evidence. The City's witnesses testified that the Alexander lands were specially benefitted. The City's attorney argued to the jury that the Alexan-

der lands were specially benefitted. The jury concluded otherwise.

Under the proper instruction set forth above a community or special benefit is a mixed question of law and fact, one to be determined by a jury. Gainesville, H. & W. R. Co. v. Hall, 78 Tex. 169, 14 S.W. 259 (1890); Hall v. Wilbarger County, 37 S. W.2d 1041 (Tex.Civ.App.1931, affirmed, Comm. of App., 55 S.W.2d 797); Rayburn, Texas Law of Condemnation, (1960), § 138.2 at page 423.

There is ample competent and credible evidence of probative force to support the jury's findings in answer to Special Issues No. 4 and No. 6. I agree with the holdings of the Trial Court and Court of Civil Appeals on these points.

The majority opinion says: "What is questioned by the City is the manner in which the award of severance damages of $143,000 to the remainder. . . ." During the trial the City's experts contended that there was no damage to the remainder—that the remainder enjoyed special benefits. The jury, the Trial Court, and Court of Civil Appeals found to the contrary. The majority opinion does not suggest that there is no evidence to support the jury verdict.

The majority states that the Trial Court restricted the City from showing the uses of the tract which were reasonably foreseeable at the time of taking. William C. Walsh, Registered Professional Engineer and witness for the City, testified to the following matters:

1. That Pearland had a population of 5,000 in 1966 and had approximately 1,200 to 1,400 residences.

2. That at the time of trial Pearland had about 6,500 population and an additional 300–400 residences.

3. That his firm designed and supervised construction of the sewage plant.

4. That this plant was a contact stabilization type disposal plant.

5. That this plant has the capacity of 1,200,000 gallons per day.

6. That the plant has been regularly inspected by the Water Quality Board.

7. Walsh then gave a complete description of the plant processes step by step.

8. That there is no odor being emitted from the plant.

9. That there is no odor along the downstream creekbed.

10. That the sewer plant cost $290,638.05.

11. That the trunk line cost $164,808.00.

12. That the Alexander tract would derive a great advantage from the sewer plant and trunk line.

13. That the best place to put a sewer plant on the Alexander tract for subdivision purposes would be the middle.

14. The actual plant on the condemned tract is within 75 feet of the property line adjacent the Alexander remainder.

15. Walsh testified that this is just the first unit of the sewer plant.

16. That there are subdivisions built around sewer plants in Houston with houses ranging up to $50,000.

17. That the Alexanders would have to construct a central sewage plant and the $164,000 trunk line to build the subdivision as septic tanks would have been impractical absent the city plant.

18. That the subdivision would need a larger plant than the one the city has built.

19. That the 2,400 home subdivision on the Alexander remainder would require a larger plant than the existing one on the condemned tract.

20. That 75 feet from the blowers, they could not be heard.

21. That the creek below the plant was crystal clear.

22. That the State Health Department has monthly inspections of the effluent.

23. That the 800 acres would require a trunk line like the city had put in for subdivision purposes.

24. That the cost of such a trunk line would be $70,000 to $90,000.

25. That the landowner's appraisal witness was erroneous when he assumed he would tie on to existing lines because that would have been impossible.

26. That in order to build the subdivision without the sewage plant on the condemned site, the trunk and lateral lines would have been very expensive and a lift station would be required. The City did not have the capacity to dispose of the sewage without additional facilities.

27. That the old plant was some distance from Clear Creek and the effluent was discharged into a ditch which ran into Clear Creek.

28. That Walsh was familiar with the new Pearland plant number three downstream from the plant on the Alexander tract.

29. That plant number three is on 2.96 acres.

30. That in other subdivisions in the area, houses were built after and close by sewer plants.

31. That the sewage plant pollutes the Clear Creek.

32. That this sewage plant will serve 6,000 of the 9,000 acres in Pearland.

33. That 6,000 acres would be served is the reason 10 acres were taken.

The majority opinion wholly fails to point out any specific ruling on the admission or exclusion of evidence which would constitute reversible error. All of the Trial Court's rulings were consistent with the order sustaining the landowners' Motion in Limine. That order was not erroneous, and the majority opinion does not so hold. That order was entirely proper.

The City sought to condemn the ten acre tract *as a site for a sewage disposal plant* with "supply reservoirs or stand pipe for water works or sewers; . . . vats, filteration pipes and other pipes," etc. Art. 3265, Vernon's Annotated Texas Civil Statutes, directs as the rule of damages in such cases that evidence shall be heard "as to the value of the property sought to be condemned and as to the damages . . . that will result to the remainder of such property belonging to such owner, if any, by reason of the condemnation of the property, *and its employment for the purpose for which it is to be condemned.* . . ." The judgment of the Trial Court awarded the City "[t]he fee simple title in and to the surface estate of the ten (10) acre parcel of land . . . *for use as a site for a sewerage disposal plant.* . . ." The City thus sought the full ten acres as a site for a sewage disposal plant and the judgment of the Court awarded title to the City to the full ten acres as a site for a sewage disposal plant. The order in limine did no more than to prohibit the City from introducing evidence that "less than the full ten acres" would "be used for such a sewer plant."

Even if the foregoing order was erroneous, it did not constitute reversible error. As pointed out in our per curiam opinion in Bridges v. City of Richardson, 163 Tex. 292, 354 S.W.2d 366 (1962), the purpose of orders of this type is "to prevent the asking of prejudicial questions and the making

# 256

of prejudicial statements in the presence of the jury." Such orders do not eliminate the necessity for showing the availability of evidence, nor do they preclude inclusion thereof in a bill of exceptions at the proper time in the course of trial. "Before a party can correctly claim error, he must offer his evidence, and secure an adverse ruling from the court." City of Corpus Christi v. Nemec, 404 S.W.2d 834 (Tex. Civ.App., Corpus Christi, 1966, no writ). *Cf.* Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.1963). The only relevant evidence offered and excluded by the Trial Court was opinion testimony of City's expert witness that, while the ten acre site was capable of accommodating a plant of twelve million gallons of sewage per day, it was not "reasonably foreseeable *that there would ever be constructed* on the ten acre site plants having a capacity greater than six million gallons per day"; and opinion testimony of the landowner's expert witness, given on cross examination, that the City was in error "when they said they needed ten acres"; that they were "not going to need it for years and years and years." The net effect of this testimony is that it was not reasonably probable that the City would ever use all of the ten acres it was condemning for the purpose for which it was condemned. Under the provisions of Art. 3265, V.A.T.C.S., quoted above, such testimony was not admissible and was properly excluded. I suggest, therefore, that City was not precluded by the Trial Court's order in limine from offering any admissible evidence of reasonably probable uses of the condemned property in the reasonably foreseeable future.

Admission into evidence of photographs of the Lockwood and La Porte sewage plants has not been held by the Court to be erroneous, and need not be noticed further. Notice should be taken on this point, however, that the majority do not look at the "whole record" but only at evidence unfavorable to the City. Neither is it suggested by the Court that the footnoted statements by counsel of their respective theories of the issue in the case were erroneous and prejudicial. Indeed, such statements were made out of the presence of the jury.

Finally, it will be noted that the judgment of reversal and remand by the majority opinion is based *solely* on its holding that the Trial Court committed reversible error by giving the special instruction which constituted a comment on the evidence. I submit that the majority opinion wholly fails to demonstrate that this error, if any, was harmful under a proper interpretation of Rule 503, Texas Rules of Civil Procedure.

I would affirm the judgments of the courts below.

CALVERT, C. J., and GREENHILL, J., join in this dissent.