**NORTHERN NATURAL GAS COMPANY,**
Appellant,

v.

Claude JOHNSON et al., Appellees.

No. 6449.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 6, 1954.

Rehearing Denied Jan. 3, 1955.

Culton, Morgan & Britain & White, Amarillo, for appellant.

James W. Witherspoon, John D. Aikin, Wayne E. Thomas and Earnest L. Langley, Hereford, for appellees.

NORTHCUTT, Justice.

This is a suit for condemnation by appellant of a right of way and easement 75 feet wide and 3,550 feet in length (aggregating 6.123 acres) for a 30 inch gas pipe line across a portion of Section 310, Block 44, H. & T. C. R. Co. Survey, Moore County, Texas owned and held by appellees individually and as trustees. Special commissioners were appointed by the County Judge of Moore County, Texas to assess the amount of damages due the land-owners. This commission awarded the damages at $2,904.53 and to this award both appellant and appellees objected. Trial to a jury was had in the County Court of Moore County, Texas. Appellant's right to condemn and all jurisdictional prerequisites were conceded and it was stipulated by the

parties that the sole issue in controversy was the amount of damages. The case was submitted to the jury upon the following four special issues:

"Special Issue No. 1

"From the preponderance of the evidence what do you find was the average market value per acre of the surface estate of the 6.123 acres of land covered by the easement for pipe line purposes involved herein, immediately before the same was condemned on the 7th day of October, 1953? Answer in dollars and cents.

"Special Issue No. 2

"From a preponderance of the evidence what do you find was the average market value per acre of the surface estate of the 6.123 acres of land *l* covered by the easement for pipe line purposes involved herein, immediately after the condemnation of the same on the 7th day of October, 1953? Answer in dollars and cents.

"Special Issue No. 3

"From a preponderance of the evidence what do you find was the average market value per acre of the surface estate of Section 310, Block 44, H. & T. C. R. Co. Survey, Moore County, Texas, in evidence herein, exclusive of the strip of 6.123 acres covered by the easement for pipe line purposes, immediately before the condemnation of the said land on the 7th day of October, 1953? Answer in dollars and cents.

"Special Issue No. 4

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by Respondents in common with the community generally, and not peculiar to them and connected with their ownership, use, and enjoyment of the particular tract of land *acorss* which the strip of land has been condemned, and taking into consideration the uses to which the strip concerned is to be subjected, what do you find from a preponderance of the evidence, was the average market value per acre of the surface estate of the remaining acres of Section 310, Block 44, H. & T. C. R. Co. Survey, Moore County, Texas, exclusive of the strip of 6.123 acres of land covered by the easement, immediately after the condemnation of said strip on the 7th day of October, 1953? Answer in dollars and cents."

The jury answered these issues as follows:

"Verdict of the Jury

"To Special Issue No. 1, We Answer $225.00

"To Special Issue No. 2, We Answer $5.00

"To Special Issue No. 3, We Answer $165.00

"To Special Issue No. 4, We Answer $145.00"

Upon this verdict, judgment was granted for the appellees for the sum of $13,870.52 and, from this judgment, appellant has perfected this appeal.

On the trial of the case, appellant offered in evidence a certain trust deed, being appellant's Exhibit 12, in which an undivided one-half interest in the section of land here involved was deeded to appellees in trust with a provision that the land should never be sold during the lifetime of the trust. The appellees objected to the introduction of this deed in evidence and the court sustained the objection and refused to permit the appellant to introduce such instrument. Under this trust deed, the following: Clay Johnson, Jr., Alice Johnson Thomas, Claude Johnson and Margaret Johnson McCurdy were the first beneficiaries under the trust and each of their interest was to go to their respective children. As stated in appellees' brief "Said right of way and easement was taken from land belonging to Appellees, and an undivided one-half interest in and to said land on said date was in an express trust which con-

tained a provision that the undivided one-half interest covered thereby shall never be sold during the life of the trust." The land covered by this trust could not be sold during the lifetime of the original beneficiaries and thereafter until the youngest surviving child of the respective parents reached the age of 21 years.

By appellant's first assignment of error, it complains of the court's action in refusing to permit the introduction of such trust deed because such deed contained provisions which in all reasonable probability precluded within the reasonable future various uses upon which the expert witnesses offered by appellees had, in part, based their estimates of market value. There cannot be any question but what, under the record in this case, appellees' witnesses in testifying as to value based their opinion upon the use of land for residential and commercial or industrial purposes.

■■■ Since appellees were attempting to base values upon farm land for residential and commercial or industrial purposes, surely appellant should be permitted to introduce evidence to show that the land could not in the near future, and probably would not be used for such purposes. The suitability of land for residential and commercial or industrial purposes cannot be considered in determining its market value where its use in the near future for such purposes is wholly uncertain and not reasonably probable. Since this trust deed provided the property could not be sold during the life of the four Johnson children and until the youngest child reached the age of twenty-one years, we think this trust deed is very material in assisting the jury in determining the damages. United States v. 711.57 acres of land in Eden T. P., Alameda County, California, D.C., 51 F. Supp. 30; City of Austin v. Cannizzo, Tex., 267 S.W.2d 808; Andrews v. City of Dallas, Tex.Civ.App., 232 S.W.2d 753.

If appellees could not sell this land they could not be willing sellers regardless of how anxious they were to sell. Certainly a jury would take into consideration whether anyone desiring to use the property for residential, commercial or industrial purposes would use it for that purpose when they could not get title to the property. Surely such restriction prohibiting the sale of farm land for any purpose would have effect upon any reasonable juror as to its value when it is sought to be shown damages to residential, commercial or industrial property.

We have grave doubts, in this particular kind of case, whether the market value of land is the proper measure of damages since the appellant only had right of way and easement and did not condemn and take title to the land. It is to be remembered that, as to the four Johnson children taking under the trust deed, they only had a life estate. Appellant's first point of error is sustained.

■■■ Since we are of the opinion that this case must be reversed because of the refusal of the court to permit the introduction of the trust deed, the other points will be discussed together. The general principle is, of course, well established that just compensation in condemnation must be measured by the owner's loss and not by the taker's gain. Under this record, since the damages were based upon a par acre of the surface estate, we are unable to determine any principles upon which the judgment was rendered. If, by virtue of establishing this pipe line in question, the surface estate was damaged certainly the fact that other pipe lines were already upon said premises with the right of establishing more that would likewise effect the land, when the whole section was being considered, and should be taken into consideration. We are unable, from this record, to determine the number of acres involved. The highway and railroad crosses the land and completely disconnects a portion of said land from that portion crossed by this pipe line. If the construction of a pipe line should damage the property, then the damage as to the construction of an additional pipe line would be based upon what additional damages the last pipe line caused. If we were to assume under this record that appellees still held title to the highway and railroad

land, such title would not leave them a right to use this land for any purpose of any appreciable or considerable value, and they could not dispose of the property covered by the highway nor the railroad even if permitted to dispose of the other portions. We are of the opinion that the judgment granted herein is excessive.

The judgment is reversed and the cause remanded.