TEXAS ELECTRIC SERVICE COMPANY V. SETH CAMPBELL.

No. A-7608. Decided May 18, 1960.
Rehearing Overruled July 20, 1960.
(336 S.W. 2d Series 742)

John R. Lee, of Kermit, Cantey, Hanger Johnson, Scarborough & Gooch and Jack C. Wessler, all of Fort Worth, for petitioner.

Finley, Dickie & Scogin, and J. Albert Dickie, of Kermit, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

Texas Electric Service Company, petitioner, an electric utility company, instituted condemnation proceedings to obtain an easement of a 50-foot right-of-way across respondent's land for the purpose of constructing high-voltage electric transmission lines to serve territories and communities of West Texas. The respondent's land consisted of approximately 21½ sections (13,670 acres) of land in Winkler County, divided by two highways, Highway 302 from Kermit to Odessa and Highway 105 from Kermit to Andrews. The area between the two highways across which the easement extended embraced approximately 4,120 acres. The 50-foot right-of-way comprising a total of 14.88 acres, extended some two miles across respondent's land.

The special commissioners appointed by the court made an award in the sum of $4,680.00. The Company complied with the provisions of Art. 3268, took possession, and proceeded with the construction of the transmission line.

The Company appealed from the award of the commissioners, the jury found that the 14.88-acre strip for the right-of-way was worth $60.00 per acre before and $12.00 per acre after condemnation; that the value of the 4105 acres between the two highways exclusive of the 14.88 acres was $60.00 per acre before and $57.70 per acre after the condemnation; that the remainder of the land north of the Andrews highway and south of the Odessa highway was worth $60.00 per acre and had suffered no diminishment in value after condemnation. Judgment was therefore entered by the trial court in favor of respondent for the sum of $10,155.74. That judgment has been affirmed by the Court of Civil Appeals. 328 S.W. 2d 208.

Petitioner does not complain of that portion of the judgment based upon the jury's assessment of the value of the 14.88-acre strip taken for the right-of-way, but says there is no competent evidence to support the jury's finding of the before and after values as to the remainder of the 4,120 acres.

The only witnesses offered by the landowner on the issue of value were two of the three commissioners who made the original award in this case. That award, signed by all three of the commissioners recites in part as follows:

"* * * and thus having estimated the injuries sustained and the benefits received by the defendants by reason of such condemnation, finding that the remainder of the property which is owned by defendant is diminished in value by reason of such condemnation, and the extent of such diminution, we do accordingly affix the actual damages which will occur to such defendants by such condemnation at $4,680.00."

One of the commissioners, a Mr. Summers, testified that the 50-foot easement strip had a value immediately prior to condemnation of $312.00 per acre and that its value after the taking was $15.60 per acre; that the balance of the land, enclosed between the two highways and crossed by the transmission line amounting to 4105 acres, had a value of $312.00 per acre before and $232.50 after, a difference of $79.50 per acre; that respondent's land lying north of the Andrews highway and south of the Odessa highway amounting to 9760 acres had a value of $250.00 per acre before and $247.50 after. Amazingly enough and unaccountably so, although this witness as a special commissioner had fixed the total damage at $4,680.00, when testifying at the trial he estimated the damages at $320,000.00. The testimony of the second witness followed along this line except the difference between his before and after valuations totaled only $60,000.00. On the other hand the witnesses for petitioner were of the opinion that the land embraced between the two highways exclusive of the condemned right-of-way were depreciated in value only two or three cents per acre.

The western edge of respondent's land lay between one-half mile and a mile from the town of Kermit, while the extreme boundaries were evidently from four to six miles away. All of the land as one tract was used solely by the respondent for ranching purposes embracing as it did some 21½ sections, while the town of Kermit itself occupied only about two sections.

The witness Summers was an employee of the Kermit State Bank and manager of the Basin Finance Company. He testified that he knew the value of this land and that he had made an investigation regarding reasonable cash market price of these lands back in 1955. Significantly the occasion referred to was the time he was serving as a special commissioner appointed by the court, when he arrived at the total amount of $4,680.00 as damages to respondent's lands. He testified to no facts that would have caused him to increase the damages from that figure to $320,000.00. He confirmed that by his statement to the effect that his testimony in this case was based on the investigation he made in the latter part of 1955. He testified that the other factors that he considered during that investigation in October or November of 1955 were the possibility of it being used for industrial purposes, its value for the sale of water and caliche, and building up of the town of Kermit out on both highways. As to the depreciation in value of the land he testified that "you couldn't build any industrial plants out there; nobody would want a home out there around one of them. And there was *possibilities* of Kermit growing to that way, and I don't know of any kind of plants or buildings that could get anyways close to a high powered line like that. And the fact that the easement they take, which gives them right to drive over that property into this high line, or right of way, they can cross it anywhere they wanted to and drive around over it. That fact depreciates the property."

The other witness, Moore, had been in the insurance and real estate business in Winkler County since 1948. He also based his testimony on the investigation made when he was acting as a commissioner in 1955. The witness knew of no comparable sales of land in that area. He only had information as to the sale of small tracts from one to 20 acres. The witness's testimony as to the expected growth and expansion of the town of Kermit was based on possibilities or rather as he finally said, on growth that was "possibly probable." As to the value of the property for ranch purposes he testified that in his opinion it was worth $200.00 per acre, exhibiting, however, a complete lack of information whatever on which to base that value.

■ In regard to this testimony the record shows that at its closest point the 50-foot easement is approximately two miles from the town of Kermit; that the easement sought and obtained does not grant the right to petitioner and its employees of unrestricted access or the privilege of driving its vehicles at will all over respondent's lands; that so far as ingress and egress

are concerned all of the lands are now under oil and gas leases with all of the customary grants. We regard all of this evidence based on possibilities rather than reasonable probabilities, on mistaken ideas as to the privileges granted to petitioner and on speculation, as incompetent. It constitutes no evidence to aid the jury in the performance of its fact finding function.

As said in State v. Carpenter, 126 Texas 604, 89 S.W. 2d 194, 200, "evidence should be excluded relating to remote, speculative, and conjectural uses, as well as injuries, which are not reflected in the persent market value of the property."

The respondent testified to finding rubbish and trash scattered over his land during the time of the construction of the high line beer cans and whiskey bottles evidencing drinking parties by unidentified participants, truck tracks "run all over the country" and "all over the pastures, even went north and south of and across their line" and generally testimony to the effect that the contractor and his employees had not used any reasonable right of ingress and egress on and from the property but roamed around over the land at will.

The county sheriff, called as a witness by the respondent, testified that during the construction of the line he went with the respondent to the ranch land south of the Odessa highway and found a pickup load of cans, boxes and trash dumped there by the contractor and his employees; that later he visited the right-of-way strip and the area on both sides and found evidence of a lot of traffic outside of the right-of-way and discovered empty beer bottles and other rubbish. Proper objections were made to this testimony and motion to exclude same was overruled.

As the Court of Civil Appeals points out, this testimony was clearly inadmissible and should have been stricken, but the court viewed it as harmless inasmuch as the jury found there had been no depreciation in the value of the land south of the highway. This evidence of unlawful use of the property was not confined to that portion lying south of the higway but revealed as well depredations of this character on the land between the two highways across and trespassing over which the transmission line right-of-way extended. The testimony was introduced for the purpose of showing the diminishment in value of the land and, if effective at all for this purpose, it must have been calculated to create the impression with the jury that the easement acquired over respondent's land gave to the petitioner,

its agents and employees the unrestricted right of entry and use of the land adjoining the right-of-way for purposes other than to take care of the transmission line and to make such changes and repairs as were necessary, and that during the life of this easement, respondent's land would be littered up with trash from time to time by petitioner's employees. We think not only was this testimony inadmissible but that it was harmful.

The petition in condemnation sets out that "it is necessary for the construction, location, maintenance, and operation of said lines that your petitioner acquire, take, hold, use and enjoy an easement of right-of-way 50 feet wide across the above described property being 25 feet on each side of the center line hereinabove described, together with the rights of ingress and egress over and across defendant's adjoining property for the purpose of a right-of-way for said lines as located, described, and designated, together with the right to construct, reconstruct, maintain, and operate the apparatuses, H-frames, insulators, devices, and arrangements necessary or proper to maintain, operate repair and rebuild the same."

■ The judgment in condemnation awards to petitioner the "right of ingress and egress over and across defendant's adjoining land for the purpose of construction, inspection, maintenance and removal of such electric transmission line." We construe the judgment to award only a reasonable right of entry for the purposes set forth and certainly does not grant to the petitioner the right to trespass and operate trucks all over the defendant's lands at will. Such use would give rise to an action for damages since such use is not contemplated by the terms of the condemnation decree.

■ The construction of this transmission line was let to an independent contractor. Even if the condemnor was itself doing the work the owner could not recover damages for tort committed by the condemnor in the condemnation proceedings. The owner is relegated to a separate action founded in tort. The measure of damages in a condemnation suit is fixed by the statute of eminent domain. Art. 3265, Vernon's Ann. Civ. Stat.; City of Austin v. Cannizzo, 153 Texas 324, 267 S.W. 2d 808; Northern Natural Gas Co. v. Johnson, Texas Civ. App., 278 S.W. 2d 410, wr. ref. n.r.e.; Cravens v. City of Amarillo, 309 S.W. 2d 903, wr. err. dism.; Tennessee Gas & Transmission Co. v. Zirjacks, Texas Civ. App., 244 S.W. 2d 837, wr. err. dism.; 16 Texas Jur., Eminent Domain, Sec. 200, p. 508.

For the error in the admission of the foregoing testimony above the judgments of the trial court and the Court of Civil Appeals are reversed and the cause remanded to the county court.

Opinion delivered May 18, 1960.

Rehearing Overruled July 20, 1960.