Joe SPINDOR et ux., Petitioners,

v.

**LO-VACA GATHERING COMPANY,**
Respondent.

No. B–4938.

Supreme Court of Texas.

Oct. 1, 1975.
Rehearing Denied Nov. 26, 1975.

Coan & Allen, Richard D. Coan, Stephenville, for petitioners.

C. O. McMillan, Stephenville, Joe A. Cohn, Jr., and F. Jerry Dorsey, Corpus Christi, for respondent.

GREENHILL, Chief Justice.

Needing a pipeline right-of-way, Lo-Vaca Gathering Company, under its power of eminent domain, took a 13.5 acre strip across the land of Joe Spindor and wife. The Spindors were awarded $2,700 for the strip taken and $7,244.80 for damages to their adjacent land, herein called the remainder. A road used for laying the pipeline was built across a lake of the Spindors, and therein lies the problem. The trial court admitted certain photographic and testimonial evidence discussed below relating to damages to a portion of the remainder, the lake. The Court of Civil Appeals reversed the judgment of the trial court and ordered a new trial only as to the damages to the remainder. 514 S.W.2d 347. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

Prior to the construction of the pipeline through the farm, the Spindors maintained a lake covering 40 to 50 acres for irrigation and fishing purposes. The path of the pipeline intersected the lake about one-third the length of the lake away from its mouth where it was normally fed by a creek, and two-thirds the length from the dam at the opposite end. To enable what it regarded as proper construction of the pipeline on this course, Lo-Vaca filled in a dirt road across the lake. Subsequent heavy rains washed out the built-up road and spread dirt throughout the lake bottom. During Mr. Spindor's testimony, his counsel introduced into evidence pictures of the lake that were taken some eight months after the date of taking. Counsel for Lo-Vaca objected that the pictures did not reflect the condition of the land on the date of taking. The trial judge admitted the pictures.

Then Spindor continued his testimony, presumably with reference to these photographs. He testified that during the negotiations with Lo-Vaca before the taking, he pointed out to the company that such a washout would occur.[1] No further objections to Spindor's testimony were made.

Later in the trial, Mr. Turner, the expert witness for the Spindors, testified to the amount of lake damage that he observed and to the cost of restoration. The major elements of his testimony were paraphrased by the Court of Civil Appeals in its opinion. 514 S.W.2d at 348–349. Turner made his observations both during and after construction of the pipeline. In essence, he testified to seeing the results of a dirt road built across a lake which subsequently was deluged with heavy rains, and he estimated the cost to remove the dirt washed into the

1. Q. Now, let me ask you this: At the time you were negotiating with Lo-Vaca Gathering Company back there originally, did you discuss with them how you wanted or what you felt like would be the way to go across this lake down there?
   A. Yes, sir.
   Q. All right, sir. What was the proposal that you made about how to put the easement across the lake?
   A. Well, they said a hundred foot would do it. So it was about fifteen feet high there, say 15 to 20, and there just wasn't nobody could cross there, see? So they just taken some dozers in there and just shoved them a way across it, made them a road, just built it across.
   Well, it came a big, heavy rain. So I asked them to put something in there. Well, that didn't work and all that washed away and part of this dirt that—it hit, it disappeared, went into the lake on account of heavy water came in there.

Q. Let me ask you this: At the time, though, back when you were negotiating with them originally, had you been talking to them about that?
   A. Yes, sir.
   Q. You felt like that's what was going to happen when they started across there?
   A. Yes, sir.
   Q. Did you discuss the problems with your spring water?
   A. Yes, sir.
   Q. And the problem they would have crossing that with their equipment, crossing that end of the lake?
   A. Yes, sir.
   Q. All right, and would you state whether or not after, in fact, the construction started, that what you had advised them would happen actually happened out there?
   A. Sure did.

lake in order to restore the lake to its prior condition.

The Court of Civil Appeals' reversal of the trial court is based solely on the admission of the testimony of Mr. Turner. It held that Turner was testifying to damages caused by the pipeline construction. During the trial, Lo-Vaca had made the same objection; and counsel for Spindor replied that their predicate for Turner's testimony had been established during the testimony of Spindor:

> Spindor's Counsel: We have the right and the testimony of Mr. Spindor who's been on the stand was that they anticipated this danger when we went in there and they discussed it with Lo-Vaca and it was the type of thing that they knew was [sic] in advance and was going to happen and we're not talking about—talking about damages.
>
> The Court: It might be admissible on diminution, if any, of the remaining property after the taking. If it's admissible at all, it's for that reason. I will overrule your objection.

In response to a question of Turner of his opinion of the cost to restore the lake, Lo-Vaca's counsel made the same objection as before, and Spindor's counsel again replied:

> We have the right—I have quoted the case two or three times on this before, that has to do with anything that affects the value of the land of the prospective buyers or tends to make it more or less valuable to a present owner. We can give evidence about that and the only way you can determine diminution of value or [sic] remainder is having somebody testify as to what the cost of restoring it back to its original state would be.

Neither Turner nor Spindor testified that the activities of Lo-Vaca in building the dirt road were negligent or unlawful. The case was tried on the theory that in attempting to do what was necessary, Lo-Vaca caused a diminution in the fair market value of the remainder of the Spindors' land in a foreseeable manner.

■ Article 3265, § 1, allows damages for diminution in value of the remainder to those which accrue "by reason of the condemnation of the property, *and its employment for the purpose for which it is to be condemned.*" [2] The factors to be considered are those which would reasonably be given consideration in negotiations between a willing seller and a willing buyer. *City of Pearland v. Alexander*, 483 S.W.2d 244 (Tex.1972); *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808 (1954). Since the damage to the lake was actually foreseen and hence clearly foreseeable, a hypothetical willing buyer-willing seller would take that factor into consideration in negotiating for the purchase of that property.

■ The expert's estimated cost to restore property is admissible in a condemnation trial to prove the probable diminution in fair market value of the remainder immediately after the taking, regardless of whether any actual damage occurs. *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194 (1936). This estimate would go to the jury for their consideration in fixing the amount of foreseeable damages in the employment of the land for the purpose for which it was condemned. It makes little sense to say that an expert can testify as to restoration costs of a hypothetical filling of the lake with dirt but it is reversible error if he testifies as to costs after the lake has actually been filled with dirt. Even after the fact, Turner could only give an estimate of the cost based on the type of equipment needed and the probable number of days such work would take.

■ We hold that if the damages actually resulting to the remainder tract from the condemnor's activities are of a nature that reasonably could have been foreseen and determined by the condemnee at the condemnation, then evidence of these damages is clearly relevant to a determination

2. Vernon's Texas Civil Statutes Annotated. Emphasis is added here.

of the fair market value of the land; and therefore, such evidence is admissible at the condemnation proceeding. *City of Pearland v. Alexander,* 483 S.W.2d 244 (Tex.1972); *City of La Grange v. Pieratt,* 142 Tex. 23, 175 S.W.2d 243 (1943); *State v. Brewer,* 141 Tex. 1, 169 S.W.2d 468 (1943). The testimony of Mr. Spindor shows that the resulting damages actually were foreseen and discussed with Lo-Vaca prior to the condemnation. Mr. Turner's testimony is relevant to a determination of the remainder damage and, therefore, admissible at the condemnation proceeding.

Since only reasonably foreseeable damage to the remainder is at issue here, its determination is in no way affected by this Court's decision in *Alexander v. City of San Antonio,* 468 S.W.2d 797 (Tex.1971), which deals with pre-condemnation trespass damage to the remainder. Likewise, *Texas Electric Service Co. v. Campbell,* 161 Tex. 77, 336 S.W.2d 742 (1960), urged by Lo-Vaca, is not persuasive because the damage incurred in that case resulted from uncontemplated, negligent misuse of the condemnee's remainder tract. There is no evidence here, as there was in *Campbell,* that would tend to prejudice the jury into the belief that Lo-Vaca would enjoy an unrestricted future right to entry and use of the remainder of the Spindors' land.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Dissenting opinion by REAVLEY, J., in which WALKER, J., joins.

Dissenting opinion by Justice STEAKLEY, J.

STEAKLEY, Justice (dissenting).

I respectfully dissent and can state my views quite briefly. This Court in *G.C. & S.F. Ry. Co. v. Fuller,* 63 Tex. 467 (1885), early established the fair market value criterion in the determination of severance damages; and, later, in *St. Louis, A. & T. Ry. Co. v. Henderson,* 86 Tex. 307, 24 S.W. 381 (1893), stated that all damages, present and prospective, that are the natural, necessary or reasonable incident of the improvement constitute the compensation which our Constitution requires *to be made in advance.* We concluded in the latter case that severance damages are those which would naturally or necessarily flow from the taking and proper construction and operation of the improvement; and that other damages caused to the balance of the tract which may be known with reasonable certainty would be included. We reaffirmed in *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194 (1936), that where a part of a tract of land has been taken for a public use, damages to the remainder tract are to be determined by ascertaining the difference between its market value *immediately before and after the appropriation,* . . . The willing-seller willing-buyer test of market value is to be applied and those factors are to be considered which would reasonably be given weight in negotiations between a seller and a buyer. *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808 (1954). See *City of Pearland v. Alexander,* 483 S.W.2d 244 (Tex.1972).

The date of taking is thus firmly established as the critical date. Indeed, the majority acknowledges the force of these precedents while at the same time, illogically and inconsistently, I think, now holds admissible post-taking or hindsight evidence at the instance of the condemnee to enhance severance damages. It is apparent, of course, that henceforth such evidence will be just as admissible under the auspices of the condemnor to reduce severance damages. It is just as apparent that these actual happenings after the date of taking could not be known to the fictional willing buyer and seller in arriving at reasonable market value in a sale on the date of taking. The market value at that time could only be influenced by what they then knew or could reasonably foresee. This would include damages to the remainder that would reasonably flow from the proper construction of the improvement. *City of*

*Pearland* and *Henderson, supra.* This was sought to be shown here by the evidence establishing the necessity for the dirt road across the lake in the construction of the pipeline; and by the testimony of Spindor that the damages to the lake that would result therefrom was discussed with Lo-Vaca in the pre-taking negotiations. The post-taking evidence under review should be ruled inadmissible under our established precedents.

I would affirm the reversal and remand ordered by the Court of Civil Appeals.

REAVLEY, Justice (dissenting).

The Court holds that evidence of actual damage (including cost of repair) to the remainder of the owner's land, which occurs during condemnor's construction, is admissible in the condemnation trial to prove the landowner's recoverable damages. That will not confine the landowner to the difference in the market value immediately before and after the taking by the condemnor. What was reasonably foreseeable to prospective buyers of Spindor's lake and land on the date of taking was one picture; the actual damage suffered some nine months later is a different one.

The result in this case seems to be fair enough to these parties. My concern is with our change of the rule without dealing with the problems of precedent and the trial of future cases. If we intend to allow the landowner to recover all damages that he suffers because of the condemnor's taking and construction—right up to the date of the trial of the condemnation case, we should say so. Such a rule should be justified against the statutes, particularly Art. 3265. It seems to me that we would then be prescribing one rule of damages for the commissioners and a different rule for the trial after appeal of the commissioners' award.

Surely our rule will work for the condemnor when events go his way. If construction is completed by the time of the trial and if there has been no rain or harm to the lake, that fact will now be admissible as the answer to the landowner's proof that the market value of his land on the date of taking allowed little value for his lake because of foreseen results of construction.

What do we do about the neighbor-condemnee down the pipeline who may have his case come to trial after Spindor's lake is full of dirt but before the construction crew have reached the neighbor and his lake? Will he be allowed to prove what is "foreseeable" in the sense of the writing by the majority, or will we restrict him to the *Carpenter* rule and his market value loss on the date of the taking?

If we were dealing here with suits for compensation of the landowner for damages suffered during construction, we might well rewrite a number of our present rules. Evidence of actual damage during construction, either caused by negligent or non-negligent conduct, might be made admissible in those suits. The present case is a condemnation case, however, and under the statute and the rule that fixes the landowner's damage at the change in market value on the date of taking, I must agree with the decision of the Court of Civil Appeals.

WALKER, J., joins in this dissent.