COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-129-CV
 

   
JOHN WAYNE COBLE                                                            APPELLANT
 
V.
 
CITY OF MANSFIELD, TEXAS                                                    APPELLEE
 
------------
 
FROM COUNTY COURT AT LAW NO. 1 
OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        This 
is a condemnation case. The issue is whether costs of a screening wall and 
landscaping constituted compensable damages to the remainder of property of 
Appellant, John Wayne Coble, resulting from the taking by Appellee, the City of 
Mansfield, of an easement covering 2.42 acres of Coble’s tract for a road 
construction project. Because we hold that Coble is precluded, as a matter of 
law, from recovering compensation for the costs in question because they are 
speculative and conjectural, we affirm the judgment of the trial court awarding 
Coble no damages to the remainder of the tract.
II. FACTUAL AND PROCEDURAL BACKGROUND
        On 
March 26, 1984, the City, a home-rule municipality, adopted a Thoroughfare Plan, 
showing long term plans for major roads and streets throughout the City, 
including East Broad Street and Matlock Road as proposed six-lane divided 
arterials. Both arterial streets were to be located, in part, on a 25.76 acre 
tract of land owned by Coble within the City, with the intersection of the two 
streets to be located in part on the southeast corner of Coble’s tract. In 
1997, the City began the process of construction, which required the City to 
acquire rights-of-way out of Coble’s tract. The City adopted resolution No. 
1129 on October 27, 1997, authorizing acquisition of a permanent right-of-way 
easement approximately sixty feet deep on the southeast and southwest edges of 
Coble’s tract.
        On 
November 25, 1997, after the parties were unable to agree on a value for 
purchase of the land to be encompassed by the easement, the City filed its 
petition in County Court of Law No. 1 of Tarrant County, exercising its power of 
eminent domain for condemnation to acquire the easement for a permanent 
right-of-way encompassing 2.42 acres of Coble’s 25.76 acre tract.[1]  The court appointed a panel of three special 
commissioners to assess Coble’s damages. See Tex. Prop. Code Ann. § 21.014 (Vernon 1984).[2]
        Following 
a hearing, the commissioners awarded Coble $46,420 for the value of the 2.42 
acres for a permanent right-of-way, and awarded no damages for diminution in 
value to the remainder of Coble’s tract. The City deposited the funds for the 
2.42 acres taken into the registry of the court and took possession of the 
condemned property. Coble timely filed a motion to withdraw the funds and 
thereafter withdrew the deposited funds. Coble also filed formal Objections to 
the commissioners’ award, thus invoking the jurisdiction of the trial court to 
determine the issue of damages to the remainder. See id. § 21.018 
(providing appeal process from commissioners’ findings).[3]
        Coble 
and the City filed cross-motions for partial summary judgment and responses. The 
sole issue presented by the summary judgment proceedings was whether the costs 
of constructing a perimeter screening wall and related landscaping estimated at 
$186,980 by Coble’s appraiser, which Coble alleged he would suffer because of 
Mansfield City Ordinance No. 1129, constituted compensable damages to the 
remainder of his property resulting from the condemnation.
        The 
City had adopted Ordinance No. 1129 approximately one year before adoption of 
the resolution to proceed with construction of the proposed roads and 
condemnation of the right of way. Ordinance No. 1129, adopted October 14, 1996, 
requires that:
  
When residential subdivisions 
are platted so that the side or rear yard of the subdivision lots are adjacent 
to a highway frontage road or an existing or proposed four-lane-undivided or 
larger thoroughfare as shown in the City’s most recent Thoroughfare Plan, a 
screening wall shall be provided along said frontage road or thoroughfare . . . 
.

  
The ordinance requires that 
the screening wall be at least six feet in height; that it be constructed of 
masonry materials; and that, in accordance with specific landscaping 
requirements, a “continuous reinforced concrete mow edge” be installed along 
the street side of the screening wall.
        The 
appraisers for the City and Coble agreed that the highest and best use for the 
remainder of Coble’s tract, both before and after the taking, was for 
residential subdivision development. The City’s motion for partial summary 
judgment contended that the “highest and best use” determination did not 
determine the true future use of the property and Coble had not yet chosen to 
develop the property as a residential subdivision; therefore, the damages sought 
were not caused by the condemnation. Rather, it argued that only a subsequent 
decision to develop the property as a residential subdivision–not the taking 
itself–would potentially “trigger” Ordinance No. 1129 that pre-dated the 
condemnation by a year.
        The 
City objected to Coble’s expert’s opinion that compliance with the ordinance 
was the “result of the taking and the resulting highway frontages” on the 
basis that it was irrelevant and stated a legal conclusion. The City further 
contended that the costs of a screening wall and landscaping were non-compensable 
“community damages”; and, alternatively, that payment to Coble for the costs 
of a screening wall and landscaping would constitute an unconstitutional 
“gift.”
        Conversely, 
Coble’s motion for partial summary judgment argued that his appraiser’s 
opinions established that the costs for constructing a screening wall and 
landscaping resulted from the condemnation of the strip for a right-of-way, and 
it was as the result of the condemnation that he would be required to comply 
with Ordinance No. 1129 for a screening wall and landscaping to develop the 
tract for a residential subdivision. Coble further argued that evidence of the 
cost of compliance with Ordinance No. 1129 was admissible under the traditional 
statement of the rule for the measure of damages to the remainder tract set 
forth in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 200 (1936) 
(stating generally that it is proper to admit evidence of all circumstances that 
would tend to increase or diminish the present market value).
        Additionally, 
Coble pleaded in his Amended Objections and urged in his motion for partial 
summary judgment that the effect of Ordinance No. 1129, separately, violated 
article I, section 17 of the Texas Constitution by constituting a “regulatory 
taking,” entitling him to inverse condemnation damages consisting of the costs 
required to comply with the Ordinance, in addition to the condemnation damages 
for the value of the 2.42 acres taken.
        After 
a hearing, the trial court denied Coble’s motion and granted the City’s 
motion. Thereafter, the parties presented to a jury the only remaining issue in 
the case, which was the market value of the 2.42 acres taken as of February 20, 
1998. At trial, as the consequence of the granting of the City’s motion for 
partial summary judgment and denying Coble’s motion, the trial court excluded 
evidence of Coble’s expert appraiser that the market value of the remainder of 
Coble’s tract, after condemnation of the 2.42 acre tract, would be diminished 
by the amount of $186,980, which constituted the projected costs to construct 
the screening wall and landscaping that would be required by the City’s 
Ordinance No. 1129 as the result of the condemnation, to develop the property as 
a residential subdivision. At trial, the City’s expert appraiser testified 
that the market value of the 2.42 acres taken was $42,200. The expert for Coble 
testified that the value of the 2.42 acres was $60,500. Following receipt of the 
jury’s verdict, the trial court granted Coble’s motion to disregard the jury 
finding and its motion for a new trial because the jury impermissibly found a 
value on a per acre basis.
        Thereafter, 
the parties entered into a settlement agreement for an agreed final judgment, 
awarding the condemned property to the City and $50,820 to Coble for the 2.42 
acres taken. As a part of the settlement, Coble reserved his right to appeal the 
trial court’s partial summary judgment precluding recovery for Coble’s 
alleged element of damages to the remainder. Accordingly, Coble timely filed his 
notice of appeal to this court.
III. STANDARD OF REVIEW
        In 
a summary judgment case, the issue on appeal is whether the movant met his 
summary judgment burden by establishing that no genuine issue of material fact 
exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); S.W. Elec. Power Co. v. 
Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear Creek 
Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the 
movant, and all doubts about the existence of a genuine issue of material fact 
are resolved against the movant. S.W. Elec. Power Co., 73 S.W.3d at 215; 
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Great Am. 
Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 
1965). Therefore, we must view the evidence and its reasonable inferences in the 
light most favorable to the nonmovant. Great Am., 391 S.W.2d at 47. The 
summary judgment will be affirmed only if the record establishes that the movant 
has conclusively proved all essential elements of the movant’s cause of action 
or defense as a matter of law. Clear Creek Basin, 589 S.W.2d at 678.
        When 
both parties move for summary judgment and the trial court grants one motion and 
denies the other, the reviewing court should review both parties’ summary 
judgment evidence and determine all questions presented. Dow Chem. Corp. v. 
Bright, 89 S.W.3d 602, 605 (Tex. 2002). The reviewing court should render 
the judgment that the trial court should have rendered. Id.
        Questions 
of law are appropriate matters for summary judgment. Rhone-Poulenc, Inc. v. 
Steel, 997 S.W.2d 217, 222 (Tex. 1999). Because the proper measure of 
damages is a question of law, it is an appropriate matter for summary judgment. See 
Interstate Northborough P’Ship v. State, 66 S.W.3d 213, 220 (Tex. 
2001); Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. 
App.—Houston [14th Dist.] 1999, pet. denied). We review the trial 
court’s legal conclusions on this issue de novo. Interstate Northborough 
P’Ship, 66 S.W.3d at 220.
IV. EMINENT DOMAIN AND COMPENSABLE DAMAGES
        Both 
the United States and Texas Constitutions require governments to compensate 
landowners for taking their property for a public use. U. S. Const. amend. V (requiring “just 
compensation”); Tex. Const. art. I, § 17 (“No person’s 
property shall be taken, damaged or destroyed for or applied to public use 
without adequate compensation being made, unless by the consent of such 
person.”). When a governmental entity condemns real property, the normal 
measure of damages is the property’s market value. Tex. Prop. Code Ann. § 21.042(b) (Vernon Supp. 2004).
        When 
only a part of a landowner’s property is taken, adequate compensation is 
required both for the part taken and for any severance damages to the remainder. 
State v. Schmidt, 867 S.W.2d 769, 772 (Tex. 1993) (noting requirement of 
compensation for damages to the remainder required since very early in this 
State’s history) (citing Buffalo B., B & Colo. R.R. v. Ferris, 26 
Tex. 588, 603 (1863)), cert. denied, 512 U.S. 1236 (1994). Consequently, 
the Texas Property Code, which now governs assessment of damages in condemnation 
proceedings, requires:
  
If a portion of a tract or 
parcel of real property is condemned, the special commissioners shall determine 
the damage to the property owner after estimating the extent of the injury and 
benefit to the property owner, including the effect of the condemnation on 
the value of the property owner’s remaining property.

  
Id. § 21.042(c) 
(emphasis added).
        The 
proper measure of compensation damages when only a portion of a tract is taken 
for public use is the market value of the part taken and “the difference 
between the market value of the remainder property immediately before the 
condemnation and the market value of the remainder property immediately after 
the condemnation, taking into consideration the nature of any improvements and 
the use of the land taken.” Interstate Northborough P’Ship, 66 S.W.3d 
at 218 (citing Carpenter, 126 Tex. 604, 89 S.W.2d at 197); see Exxon 
Pipeline Co. v. Zwahr, 88 S.W.3d 623, 627 (Tex. 2002) (stating compensation 
in a partial taking “is measured by the market value of the part taken plus 
any diminution in value to the remainder of the land”) (citing Westgate, 
Ltd. v. State, 843 S.W.2d 448, 456 (Tex. 1992)).
        It 
is well settled that courts should admit as market-value evidence such matters 
as suitability, adaptability, surroundings, conditions before and after, and all 
circumstances which tend to increase or diminish the remainder’s market value. 
Carpenter, 126 Tex. 604, 89 S.W.2d at 200. A condemnee “may recover 
damages which are reasonably foreseeable, and he [or she] may show the 
reasonably probable uses of the tract taken that are calculated to depress the 
value of the remainder tract and thus enhance the recovery of damages.” City 
of Pearland v. Alexander, 483 S.W.2d 244, 247 (Tex. 1972).
        Damages 
due to “required modifications to the remainder, as a result of the 
condemnation, or damages due to a loss of improvements on the remainder because 
of the condemnation may, on a proper showing, be compensable.” State v. 
Centennial Mortgage Corp., 867 S.W.2d 783, 784 (Tex. 1993) (holding evidence 
of costs of modifications to remainder required as result of condemnation of 
portion for highway, including rebuilding retention ponds and other improvements 
formerly located on condemned strip, admissible to show decrease in market value 
of remainder). Importantly, however, evidence should be excluded “relating to 
remote, speculative, and conjectural uses, as well as injuries, which are not 
reflected in the present market value of the property.” Schmidt, 867 
S.W.2d at 773 (quoting Carpenter, 126 Tex. 604, 89 S.W.2d at 200).
V. ANALYSIS
        The 
City’s appraisal offered as summary judgment evidence did not include any 
damages concerning the estimated cost of constructing a perimeter screening wall 
because the City’s legal counsel instructed the appraiser to exclude such 
costs. Coble’s appraiser, Jaime Wickliffe, however, in her affidavit stating 
her opinions in support of Coble’s motion for partial summary judgment, 
included damages for the estimated cost of construction of a perimeter screening 
wall in the amount of $185,000. Her report stated that costs of the wall were 
included because “[a]s a result of the taking and the resulting roadway 
frontages, the property is subject to a screening wall requirement imposed by 
the City of Mansfield, in order to develop the property as a single family 
residential subdivision.”
        It 
was undisputed that Coble’s tract carried a single family residential zoning 
classification in 1996, and also that the highest and best use of the remainder 
was for residential subdivision development. Coble’s appraiser’s opinions, 
and his arguments on appeal as to the admissibility of her opinions, are based 
upon the assumption that the property will, in fact, be developed as a 
residential subdivision. However, it was undisputed that, at the time of the 
condemnation, Coble’s tract was vacant and unimproved land that had not been 
platted for residential subdivision development, and there was no evidence that 
any such development was proposed.
        Ordinance 
No. 1129 is qualified by certain conditions and exceptions. The plain language 
of the ordinance provides that its requirements are only invoked “when a 
residential subdivision is platted.” Further, the ordinance specifies that 
the screening wall shall be provided only when a subdivision is platted “so 
that the side or rear yard of the subdivision lots are adjacent to a highway 
frontage road or an existing or proposed four-lane undivided or larger 
thoroughfare as shown in the City’s most recent Thoroughfare Plan.” 
Ordinance No. 1129 further states that the screening wall requirement “shall 
not apply when a residential subdivision is platted so that the side or rear 
setback adjacent to said highway frontage road or thoroughfare is seventy-five 
(75) feet or greater.” Finally, Ordinance No. 1129 provides that, “in 
exceptional cases, the Planning and Zoning Commission may grant a variance or 
modify the screening wall requirement described herein.”
        Not 
only had Coble’s remainder tract not been platted at the time of the 
condemnation but also, contrary to the assumption upon which Coble’s theory 
for remainder damages was asserted, the City presented the affidavit of Felix 
Wong, Planning Director for the City of Mansfield, in its response to Coble’s 
motion for partial summary judgment, pointing out,
  
The provisions of Ordinance 
1129 to which Mr. Coble attributes damages to the remainder of his property 
would be effective only if his property retains a residential zoning 
classification. Mr. Coble is free to seek other zoning classifications for this 
property which, if approved would remove the present zoning classification.

  
Wong stated in his affidavit 
that, following the 1998 hearing by the special commissioners, Coble had filed 
an application to change the zoning classification on portions of his property 
from residential to C-2 commercial. Wong averred that the Planning and Zoning 
Commission had recommended Coble’s application for approval, and the Mansfield 
City Council approved it on first reading. Wong’s affidavit stated that, 
“[i]f approved by council on third reading, Mr. Coble will be released from 
his obligation to build a screening wall.” Wong’s affidavit was not 
controverted by Coble.
        We 
agree with the City that Coble is seeking to recover the estimated cost of 
complying with an ordinance, the applicability of which had not yet been 
determined at the time of taking, because Coble offered no evidence that any of 
the prerequisites for application of the ordinance had been met or would be met 
in the foreseeable future, so as to require him or a purchaser to incur the 
costs of compliance. The City’s evidence shows that, to the contrary, it is 
probable that the property will be developed as commercial, rather than 
residential. We agree with the City that, under these circumstances, any damages 
claimed by Coble to comply with Ordinance No. 1129 to develop the property as a 
residential subdivision were not reasonably foreseeable, but were remote, 
speculative, and conjectural. See City of Harlingen v. Estate of Sharboneau, 
48 S.W.3d 177, 187 (Tex. 2001) (Baker, J., concurring); Alexander, 483 
S.W.2d at 247; Carpenter, 126 Tex. 604, 89 S.W.2d at 200.
        In 
City of Austin v. Cannizzo, the supreme court was faced with the issue of 
whether to admit evidence of a use for which the remainder of an unimproved 
tract, after a partial taking, was suitable and adaptable at the time of the 
condemnation. 153 Tex. 324, 267 S.W.2d 808, 812-13 (1954). The court noted that, 
in the willing seller-willing buyer test of market value, it is “frequently 
said that all factors should be considered which would reasonably be given 
weight in negotiations between a seller and a buyer.” Id. at 814. In so 
stating, the court further cautioned, however:
  
This would exclude 
consideration of purely speculative uses to which the property might be 
adaptable but wholly unavailable but would permit consideration of all uses to 
which the property was reasonably adaptable and for which it was, or in 
reasonable probability would become, available within a reasonable time. . . . 
‘To warrant admission of testimony as to the value of land for purposes other 
than that to which it is being put at the time of the taking, it must first be 
shown: 1. That the property is adaptable to the other use. 2. That the other use 
is reasonably probable within the immediate future, or a reasonable time. 3. 
That the market value of the land has been enhanced thereby.’

  
Id. (citation omitted).
        The 
evidence is undisputed in this case as to the first element, that the property 
is adaptable to development as a residential subdivision, but there is no 
evidence of the second element listed in Cannizzo. See id. Not 
only is there no evidence the property will be so developed within the immediate 
future or a reasonable time, but the only evidence is to the contrary, that 
Coble does not intend to do so and has applied for a zoning change for 
commercial use, as to which Ordinance No. 1129 would not apply.
        The 
court in Cannizzo also held that opinion evidence as to the present 
market value of the unimproved remainder property might be admissible, taking 
into consideration its adaptability to subdivision residential or commercial 
use, but that opinions as to the value of nonexistent lots in a hypothetical 
subdivision were “too speculative to be admitted as direct evidence of market 
value.” Id. at 816. More recently, in City of Harlingen, despite 
the parties’ stipulation that the highest and best use of vacant land was 
residential subdivision development, the court held that an expert’s opinion 
testimony of market value based upon the subdivision development method was not 
relevant because it involved a number of analytical steps, “most involving 
assumptions and estimates, any one of which could seriously affect the 
appraisal’s accuracy.” 48 S.W.3d at 184. Characterizing and rejecting the 
use of the subdivision development method for determining market value of raw 
land in City of Harlingen as “conjectural and speculative,” the court 
stated that such valuation testimony “bypassed all of the problems that could 
appear during an actual development, substituting instead the best possible 
outcome.” Id. at 184-85.
        As 
in City of Harlingon, the opinion testimony of Coble’s appraiser and 
Coble’s own theory for recovery of the costs of compliance with Ordinance No. 
1129 are based upon the speculative assumption that residential subdivision 
development of the remainder tract will occur, and that the property will 
be platted so that the layout of lots will trigger the necessity to incur the 
costs to comply, bypassing all of the problems as well as the steps that might 
occur with possible residential development of the tract. See id. Coble 
offered no evidence that: (1) the remainder of his tract had been platted or was 
even in the planning stages of being platted as a residential subdivision; (2) 
any such plat or proposed plat would place the side or rear yard of the 
subdivision lots adjacent to the streets to be constructed by the City for which 
the easement was being taken; or (3) the property was platted or proposed to be 
platted so that the side or rear setback adjacent to the highway frontage road 
or thoroughfare would be less than seventy-five feet. Additionally, Coble 
offered no evidence that he would be unable to get a variance or a modification 
of the screening wall requirement from the Mansfield Planning and Zoning 
Commission.
        We 
hold that Coble’s theory of damages for the remainder and the opinion 
testimony of his appraiser were based on speculation and conjecture and that the 
trial court properly granted the City’s motion for partial summary judgment, 
ruling that the costs of compliance with Ordinance No. 1129 were not recoverable 
as damages to the remainder. The costs of complying with Ordinance No. 1129 were 
not reasonably foreseeable at the time the City condemned his 2.42 acre tract, 
but instead were remote, speculative, and conjectural.[4]  
City of Harlingen, 48 S.W.3d at 187; Carpenter, 126 Tex. 604, 89 
S.W.2d at 200; see Tex. Elec. Serv. Co. v. Campbell, 161 Tex. 77, 336 
S.W.2d 742, 745 (Tex. 1960) (holding certain evidence in eminent domain 
proceeding “based on possibilities rather than reasonable probabilities, on 
mistaken ideas as to the privileges granted to petitioner and on speculation, as 
incompetent”); see also S.W. Bell Tel. Co. v. Radler Pavilion Ltd. P’ship, 
77 S.W.3d 482, 486 (Tex. App.—Houston [1st Dist.] 2002, pet. 
denied) (holding expert testimony as to redevelopment of remainder to highest 
and best use as multi-use commercial center, after taking of portion for utility 
easement, was based on speculative assumption that such redevelopment would 
occur and was inadmissible absent evidence that such redevelopment was 
reasonably probable within the immediate future or a reasonable time).
        The 
City further argues that Coble is effectively seeking to recover the potential 
future costs of complying with the ordinance as damages for inverse condemnation 
by a regulatory taking, when the applicability of Ordinance No. 1129 had not 
been determined at the time of the eminent domain proceeding. Coble attempted to 
raise this issue in the trial court and argues that application of Ordinance No. 
1129 creates a taking by inverse condemnation, as the result of the City’s 
condemnation of the strip easement and development of the roads adjacent to his 
property. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 
1998) (recognizing that takings can either be physical or regulatory), cert. 
denied, 526 U.S. 1144 (1999); Town of Flower Mound v. Stafford Estates 
Ltd. P’ship, 71 S.W.3d 18, 29 (Tex. App.—Fort Worth 2002, pet. granted) 
(“A regulatory taking may occur when governmental land-use regulation deprives 
a land owner of all economically viable use of his land or when the land-use 
regulation does not substantially advance a legitimate state interest.”); see 
also 45 Jeff Civins et al., Texas Practice: Environmental Law § 22.2 (1997) (discussing 
condemnation versus inverse condemnation proceedings).
        Ordinance 
No. 1129 is triggered by the development of the remainder property in a 
particular manner—not by the condemnation or construction of the road itself. 
The development has not occurred, nor has it been proposed. As argued by the 
City, such a regulatory takings claim was not “ripe” at the time of the 
eminent domain proceeding because no regulatory taking occurs until the 
governmental entity charged with implementing the regulation reaches a final 
decision regarding application of the regulation to the property. Mayhew, 
964 S.W.2d at 929 (citing Suitum v. Tahoe Reg’l Planning Agency, 520 
U.S. 725, 733-34 & n.7, 117 S. Ct. 1659, 1664-65 & n.7 (1997)). A 
“final decision” usually requires a rejected development plan. Id.; see 
Hodel v. Va. Surface Mining & Reclamation Ass’n, 452 U.S. 264, 293-97, 
101 S. Ct. 2352, 2369-71 (1981) (refusing to consider takings claim based on 
general regulatory provision that had not been applied to specific properties 
and from which no administrative relief had been sought).
        Absent 
a showing of “futility,” which Coble has not asserted, the ripeness doctrine 
also requires the plaintiff to apply for a variance to establish to what extent 
the regulatory authority will permit development. Town of Sunnyvale v. 
Mayhew, 905 S.W.2d 234, 245 (Tex. App.—Dallas 1994) (citing Williamson 
County Reg. Planning Comm’n v. Hamilton Bank, 473 U.S. 172, 186, 105 S. 
Ct. 3108, 3116 (1985)), rev’d on other grounds, 964 S.W.2d 922 (Tex. 
1998).
        Ripeness 
is an element of subject matter jurisdiction. Mayhew, 964 S.W.2d at 928. 
As such, ripeness is a legal issue subject to de novo review that we could raise 
sua sponte. Id. Here, the City has raised the issue of ripeness, and we 
agree that any claim that Coble may have for a regulatory taking is not ripe for 
review because there is no evidence that the City has made a final decision as 
to the applicability of the ordinance to Coble’s remainder tract, and there is 
no evidence that he has requested a variance. Therefore, neither this court nor 
the trial court has subject matter jurisdiction over this claim. To the extent 
that Coble or a subsequent purchaser may have such a claim, it may be pursued 
when and if the property is platted for residential subdivision development in 
the future.
VI. CONCLUSION
        We 
hold that the trial court did not err in granting the City’s motion for 
partial summary judgment and in denying Coble’s motion for partial summary 
judgment, thereby precluding recovery of damages to the remainder of Coble’s 
tract concerning the construction of a screening wall and related landscaping in 
compliance with Ordinance No. 1129. We further hold that we, along with the 
trial court, lack subject matter jurisdiction to consider Coble’s regulatory 
taking claim in this eminent domain proceeding and that the trial court, 
therefore, did not err in refusing to grant relief on that claim. We overrule 
Appellant’s sole issue and affirm the trial court’s judgment.
 
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
  
 
PANEL B:   HOLMAN, 
GARDNER, and WALKER, JJ.
 
DELIVERED: February 12, 2004


NOTES
1.  
Eminent domain is the right or power of a sovereign state to appropriate private 
property for the promotion of the general welfare. Tex. Highway Dep’t v. 
Weber, 147 Tex. 628, 219 S.W.2d 70, 72 (1949).
2.  
Section 21.014 concerns the appointment of special commissioners and states, in 
pertinent part: “The judge of a court in which a condemnation petition is 
filed or to which an eminent domain case is assigned shall appoint three 
disinterested freeholders who reside in the county as special commissioners to 
assess the damages of the owner of the property being condemned.” Id.
3.  See 
State v. Martini, 902 S.W.2d 138, 143 (Tex. App.—Houston [1st 
Dist.] 1995, no writ) (noting effect of filing objections to award is to vacate 
special commissioners’ award and to convert administrative proceeding into 
ordinary pending cause); see also State v. Jackson, 388 S.W.2d 924, 925 
(Tex. 1965) (noting objections vest court with jurisdiction).
4.  In 
light of this disposition, we need not address the City’s alternative 
arguments that the costs of a screening wall and landscaping were non-compensable 
as community damages and that such would constitute an unconstitutional 
“gift.” See Tex. R. App. P. 47.1.